# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ADAM STEINBRUEGGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1210MLM |
| | ) | |
| DAVE DORMIRE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Adam Steinbruegge ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 10. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 12.

## I.
## BACKGROUND

Petitioner was charged by Amended Indictment as follows: Count I, robbery in the first degree, in that on or about December 6, 2004, in St. Charles County, Petitioner forcibly stole a quantity of U.S. Currency in the charge of Christopher Williams, and in the course thereof Petitioner displayed what appeared to be a dangerous instrument; Count II, armed criminal action, in that on or about December 6, 2004, Petitioner committed the felony of robbery in the first degree as charged in Count I, and he knowingly committed the felony of robbery in the first degree as charged in Count I, by, with, and through the use, assistance, and aid of a dangerous weapon; Count III, the class C felony of possession of a controlled substance, in that on or about December 10, 2004, in St. Charles

County, Petitioner possessed psilocyn, a controlled substance, knowing of its presence and nature.

Resp. Ex. C at 8-9.

Petitioner testified at his trial and did not present any witnesses. The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

> In the light most favorable to the verdict, the facts at trial reveal that [Steinbruegge], James Mann and Jeremy Blok robbed a worker at gunpoint at the Burger King restaurant where Mann worked. [Steinbruegge] was arrested at his house. The police handcuffed [Steinbruegge] and searched him. They found $110.00 and a bag of "psychedelic mushrooms" which tested positive for psilocin, a controlled substance. [Steinbruegge] was charged with first degree robbery, armed criminal action and possession of a controlled substance, and the case proceeded to trial.

Resp. Ex. E at 2-3.

Also, testimony at Petitioner's trial was that around midnight on Sunday, December 5, 2004, Christopher Williams and James Mann were working the closing shift at Burger King and cleaning up the restaurant after it closed (Resp. Ex. D, Trial Transcript ("Tr.") 172-73, 219); that while Mann

---

[1]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)).  See also  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988).  The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).  Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d).  Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

was at the sink doing dishes, Williams, the shift coordinator, took the garbage out the back door to the dumpster behind the restaurant (Tr. 172-74, 192, 193); that Williams was then approached by Jeremy Blok who was wearing a black ski mask, black gloves, and a black jacket with a hood (Tr. 174, 177, 198); that Blok put a gun to Williams's head, asked if there was anyone else there, and where the money was (Tr. 174, 190); that Blok then took Williams inside the restaurant and escorted him and Mann into the office (Tr. 175); that Blok proceeded to tie Mann with "zip ties" and put him under the office desk while Williams unlocked the safe (Tr. 166, 167, 175-76); that because Williams was shaking and was having trouble opening the safe, Blok told him that it would be a good idea if he did not mess up, a statement Williams interpreted as a threat (Tr. 176); that after Williams opened the safe he was directed to put the money into a backpack (Tr. 175, 177); and that Williams's wrists were then zip tied behind his back, his legs were zip tied, and he was placed face down on the floor (Tr. 175, 179, 180).

Further, the testimony was that while Blok was inside robbing the Burger King, Adam Schneider and Petitioner waited in the getaway car parked nearby on a side street (Tr. 205, 208, 212, 234, 239, 245, 317, 324); that a total of three thousand one hundred and fifteen dollars was taken (Tr. 201); that Mann used a pocket knife which he had in his back pocket to cut his hands free and then cut Williams loose (Tr. 167, 180); and that Williams then called his boss and 911 to report the robbery (Tr. 178, 199).

Testimony was that Mann confessed to the robbery and implicated Schneider and Petitioner (Tr. 205, 208, 223, 229, 254); that the same zip ties that Schneider had given Blok were found at Schneider's apartment along with the pellet gun used by Blok in the robbery (Tr. 276-77, 299, 301, 313, 318, 325); that when Petitioner was arrested at his house, he consented to a search of his room where $870 in cash and a new pair of tennis shoes were found (Tr. 242, 324-25, 331, 334-35); that

also, on Petitioner's person, officers found $110 of cash and a bag of "psychedelic mushrooms" which later tested positive for psilocyn, a schedule one controlled substance (Tr. 211,21415, 242, 324-25, 341, 355); and that Petitioner admitted to police that he waited in the car with Schneider while Blok robbed the Burger King, and that when Blok returned, they drove to his house to divide the proceeds (Tr. 205, 208, 246, 254).

At his trial Petitioner testified that the mushrooms found in his pocket when he was arrested were his and that he was in the car with Schneider waiting for Block (Tr. 388, 395, 404, 407); that Blok gave him a thousand dollars and that he bought new shoes the day after the robbery with that money (Tr. 398, 408, 409); and that because he was high and not paying attention, he did not know why Blok got out of the car or what Blok was doing while he and Schneider were waiting in the car for him (Tr. 399, 421-22, 423).

Petitioner was convicted on all three charges and sentenced to twelve years for first degree robbery, three years for armed criminal action, which sentences were to be served concurrent with one another. Petitioner was also sentenced to three years for possession of a controlled substance, which sentence is to be served consecutive to the sentences imposed for Counts I and II. Resp. Ex. C. 46-47. Petitioner filed a direct appeal and the Missouri Court of Appeals affirmed the judgment against him. Resp. Ex. A, Ex. E at 2.

Petitioner filed a pro se post-conviction relief motion. Resp. Ex. I at 3-20. Counsel was appointed and filed an Amended Motion to Vacate, Set Aside, or Correct Sentence and Request for Evidentiary Hearing. Resp. Ex. I at 21-44. The motion court denied Petitioner's post-conviction relief motion. Resp. Ex. I at 45-54. The Missouri appellate court affirmed the motion court's denial of Petitioner's post-conviction relief motion. Resp. Ex. K.

Petitioner filed a § 2254 Petition on July 31, 2009, in which he raises the following grounds

for relief:

> **(1)** the prosecutor failed to state facts during opening statement sufficient to prove
> the charge of possession of a controlled substance;[2]

> **(2)** the trial court erred in not removing a juror whose wife's maiden name was
> the same as Petitioner's;

> **(3)** trial counsel was ineffective for failing to object when Petitioner attended the
> trial in prison garb;

> **(4)** trial counsel was ineffective for failing to call Petitioner's accomplices as witnesses
> at trial;

> **(5)** trial counsel was ineffective for failing to submit a jury instruction on second
> degree robbery;

> **(6)** trial counsel was ineffective for failing to object to the prosecutor's analogy in
> closing argument comparing Petitioner's case to the "Son of Sam";

> **(7)** direct-appeal counsel was ineffective for failing to argue that the trial court erred
> in denying Petitioner's motion for acquittal at the close of all evidence because the
> State did not prove beyond a reasonable doubt that an actual gun was used in the
> robbery.

Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her

claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125

F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an

abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)).

A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims'

---

[2]     As discussed below, in the interest of justice, the court will assume that Petitioner
intends to raise in Grounds 1 and 2 the issues which he raised before the Missouri appellate court.

(citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Respondent contends that Petitioner has procedurally defaulted Grounds 1 and 2. In his §

2254 Petition, Petitioner did not articulate Grounds 1 and 2 precisely as he articulated the two points

he raised in his direct appeal. The court finds, however, for purposes of determining whether he has

procedurally defaulted Grounds 1 and 2, in the interest of justice, that Petitioner raised the issues of

Grounds 1 and 2 before the Missouri appellate court and that, therefore, he has not procedurally

defaulted Grounds 1 and 2. The court further finds that Petitioner's § 2254 Petition is timely filed.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the

Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor,

529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the

Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably.

Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234

F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas

petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or

involved an unreasonable application of, clearly established Federal law' under 28 U.S.C.

§2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be

considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins,

306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500

(8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a

judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

[It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

# IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687

(1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent

in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

# V.
## DISCUSSION
**Ground 1 - The prosecutor failed to state facts during opening statement sufficient to prove the charge of possession of a controlled substance:**[3]

Petitioner contends that a prosecutor must state facts sufficient to prove the charge of possession of a controlled substance. The Missouri appellate court considered that:

> During the State's opening statement, the prosecutor failed to mention the drug charge. Defense counsel moved for a directed verdict of acquittal, and the State asked to re-open, stating:
>
>> Briefly, when Mr. Steinbruegge is arrested, they go over, they arrest him, they go through his pockets, they search him. They see a

---

[3] At trial, Petitioner did not raise this objection. As such, the Missouri appellate court considered the issue of Ground 1 for plain error. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. On the other hand, in Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Ground 1 is procedurally barred. See also, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

> mushroom under something. I don't know how to pronounce the drug. It's a controlled substance. They found that, that's what this third count is. Thank you.

Defendant did not object to the amended opening statement.

Resp. Ex. E at 2.

Upon addressing the issue of Ground 1, the Missouri appellate court held:

> Under Rule 27.02 and Section 546.070(1) the State is required to make an opening statement in the trial of a criminal offense. The principal function of the State's opening statement is to inform the jury and the defendant of the evidence the State expects to present and the significance of that evidence. State v. Smith, 988 S.W.2d 71, 75 (Mo. App. W.D. 1999).

> However, an opening statement is not a test of the sufficiency or competency of the evidence. The scope and manner of the opening statement is generally within the discretion of the trial court. Id. at 76. The trial court has the power to enter a judgment of acquittal after the State has made its opening statement when it "clearly and affirmatively appears from the statement that the charge against [the] accused cannot be sustained under any view of the evidence consistent with it." Id. This may be done only after the State has an opportunity to correct or supplement the statement. Id.

> An opening statement will withstand a motion for judgment of acquittal if it contains facts sufficient to make a submissible case. State v. Watson, 839 S.W.2d 611, 615 (Mo. App. E.D. 1992). We will not reverse a conviction because of a defective opening statement absent a showing of prejudice to the defendant. Id.

> [Petitioner] was charged with possession of a controlled substance pursuant to Section 195.202. To establish possession, the State must show a conscious and intentional possession of the controlled substance, either actual or constructive, and an awareness of the presence and nature of the substance. State v. Foulks, 72 S.W.3d 322, 324 (Mo. App. S.D. 2002). The sufficiency of the opening statement is tested by accepting as true the facts contained in the statement together *with all reasonable interferences*. Smith, 988 S.W.2d at 75 (emphasis added).

> Here, in the opening statement, the State stated that police searched [Petitioner's] pockets and found a "psychedelic mushroom," which was a controlled substance. From these facts, it is reasonable to infer that the mushroom was in [Petitioner's] pocket, which is actual possession. Moreover, it is reasonable to infer that [Petitioner] was aware of the "presence and nature" of items in his pockets, including the "presence and nature" of the mushroom. These facts, together with the reasonable inferences to be drawn from the facts, were sufficient to inform the jury and [Petitioner] of the evidence the State would present and the significance of that

evidence. Moreover, [Petitioner] has not shown how he was prejudiced by the alleged insufficiencies in the opening statement, and we will not reverse absent a showing of prejudice by [Petitioner]. Therefore, [Petitioner] has not demonstrated a manifest injustice or miscarriage of justice. The trial court did not plainly err in refusing to direct a verdict of acquittal following the State's amended opening statement.

Resp. Ex. E at 5-6.

First, the claim which Petitioner makes in Ground 1 is not cognizable pursuant to federal habeas proceedings as his argument in support of Ground 1 is based on Missouri law; he does not allege a violation of the United States Constitution. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." In the instant case, Petitioner does not assert a constitutional violation in Ground 1, but merely requires the court to interpret and apply Missouri Rule 27.02 and Mo. Rev. Stat. §

546.070(1). As such, the court finds that the issue raised in Petitioner's Ground 1 is not cognizable under § 2254.

In the alternative, the court will consider federal law applicable to the issue of Petitioner's Ground 1. See Williams, 529 U.S. 362. First, under federal law, a trial court has broad discretion in controlling the direction of opening statements. See United States v. Contrad, 320 F.3d 851 (8th Cir. 2003). Moreover, federal law provides that "[t]he only purpose of opening statements is to inform the jury what the case is about and to outline the proof that will be used- on the one hand to establish the commission of the crime and on the other to outline the defense-so that the jurors may more intelligently follow the testimony as it is related by the witnesses." Foster v. United States, 308 F.2d 751, 753 (8th Cir. 1962). "The prosecutor's opening statement should objectively outline the evidence reasonably expected to be introduced during the trial." United States v Kalagain, 957 F.2d 527, 528 (8th Cir. 1992) (citing United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir.1985); United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988)). "Prosecutorial misconduct warrants reversal when the prosecutor's remarks (1) are improper, and (2) deprive the defendant of a fair trial by prejudicially affecting the defendant's substantial rights." Id. (citing United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985)).

Consistent with federal law, in Petitioner's case, the Missouri appellate court considered the broad discretion afforded the trial court in regard to the trial court. See Contrad, 320 F.3d 851. Additionally, the Missouri appellate court considered that opening statement will withstand a motion for judgment of acquittal if it contains facts sufficient to make a submissible case. See Foster, 308 F.2d at 753; Kalagain, 957 F.2d at 528. Further, the Missouri appellate court considered that Petitioner was not prejudiced as a result of the prosecutor's opening statement; that from the facts stated by the prosecutor it was reasonable to assume that the mushroom in Petitioner's pocket was

in his actual possession; and that the prosecutor's opening statement was sufficient to inform the jury and Petitioner of the evidence the State would present and the significance of that evidence. See id. This court notes that the trial court exercised its discretion and permitted the prosecutor to supplement the State's opening statement to inform the jury that Petitioner was also charged with possession of a controlled substance. Under such circumstances, it cannot be said that Petitioner was prejudiced by the initial failure of the prosecutor to inform the jury that Petitioner was charged with possession of a controlled substance and to inform the jury of the facts relevant to that charge. The court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground 1 was not contrary to federal law and that it was a reasonable application of federal law. See Contrad, 320 F.3d at 851; Kalagain, 957 F.2d at 528; Foster, 308 F.2d at 753. As such, the court finds that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - The trial court erred in not removing a juror whose wife's maiden name was the same as Petitioner's:**

The Missouri appellate court set forth the facts relevant to Petitioner's Ground 2 as follows:

> Before the second day of trial began, a juror asked to speak to the judge. The juror told the court that his wife's maiden name was Steinbruegge. When questioned by the court, the juror stated that he did not know [Steinbruegge] or his parents. He stated that if there was any relation between his wife and [Steinbruegge], it was distant. The juror testified that he had not discussed the case with his wife nor had he done any investigation into the relation. He stated that his wife had three brothers, named Ron, Rich and Randy. As far as he knew, his wife's family all lived in St. Charles County, although she had grown up in north St. Louis County.

> Upon questioning by the court, [Steinbruegge] stated that he did not know the juror and had never met him. However, [Steinbruegge] did state that he had a "second or third" uncle named "Richy" who lived in north St. Louis County, who he has met "a couple times." He did not know if the juror was related to him. [Steinbruegge] made a motion to remove the juror, which the court denied.

Resp. Ex. E at 2-3.

Upon considering the issue of Ground 2, the Missouri appellate court held:

Here, [Steinbruegge] did not prove that he was related to the juror. [Steinbruegge] claims that because [he] had an "uncle Richy" and the juror's wife's brother's name was "Rich," the juror and [Steinbruegge] were related. However, there was no evidence that the juror's [wife's] brother Rich was the same person as [Steinbruegge's] "uncle Richy." The only evidence connecting the two was their similar names. The juror testified that his wife's family had all relocated to St. Charles County whereas [Steinbruegge] testified that his "uncle Richy" lived in north St. Louis County, in Florissant, Berkeley or Ferguson.

Second, even if "uncle Richy" was the same person as the juror's wife's brother, [Steinbruegge] offered scant evidence of his actual relation to "uncle Richy." [Steinbruegge] testified that Richy was his "second or third" uncle, and he was related to Richy "somehow." When asked how he was related, [Steinbruegge] replied "I think by marriage or something. I ain't for sure. I only met him a couple times." And later, he said that he "had no clue" how Richy would be related to him. [Steinbruegge] also testified that he had never met the juror or heard his name. Likewise, the juror testified that he had never met or seen [Steinbruegge], and he did not know [Steinbruegge's] name, parents or immediate family. Thus, with no proof that [Steinbruegge] was actually related to the juror, it was not an abuse of discretion for the trial court to deny [Steinbruegge's] motion to disqualify the juror.

Resp. Ex. E at 7-8.

As required by <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 2. First, the Sixth and Fourteenth Amendments of the Constitution guarantee the right to an impartial jury. <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85 (1988). Second, federal law provides that a defendant must show bias on the part of juror; a court will not imply bias. <u>See</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 945 (1982). However, "'Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury.'" <u>Id.</u> (quoting <u>Dennis v. United States</u>, 339 U.S. 162, 171-72 (1982)).

In Petitioner's case the Missouri appellate court considered that Petitioner was given an opportunity to show impartiality and that he failed to do so because he adduced no proof of a relationship with the juror at issue or that Petitioner was actually related to the juror. Further, the Missouri appellate court considered the juror's testimony that he did not know Petitioner, his parents, or immediate family. Under such circumstances, the court finds that the decision of the Missouri

appellate court is not contrary to federal law and that it is a reasonable application of federal law. See Smith, 455 U.S. at 945. As such, the court finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - trial counsel was ineffective for failing to object when Petitioner attended the trial in prison garb:**

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held as follows:

> Before trial began, the following exchange occurred:
>
> [Trial Court]: I should also note before we bring up the venire panel that [Steinbruegge] is wearing the orange suit provided by St. Charles County, is not wearing street clothes. Is that at [Steinbruegge's] request, [Defense Counsel?]
>
> [Defense Counsel]: That is at his counsel's request, Your Honor.
>
> [Trial Court]: Did you agree with your counsel's request, [Mr. Steinbruegge], that you wear that as opposed to street clothes?
>
> [Steinbruegge]: Yes, ma'am.
>
> When [Steinbruegge] testified, his counsel noted he was wearing the orange suit in the context of showing [Steinbruegge] was confined in the St. Charles County jail and had been there since he was arrested almost five months earlier. [Steinbruegge's] counsel again mentioned he was in orange during his closing argument when he stated "[i]f you want to believe because he is dressed in orange, because there is a deputy who is a security officer right next to him, the fact that he has a thing on his leg, that he can't run, you want to believe all that suggests he is guilty, then there is no purpose in trial."
>
> The motion court found the record clearly demonstrated the decision to have [Steinbruegge] wear the orange suit was trial strategy and was an attempt to evoke sympathy for [Steinbruegge] because he had been in jail since he was arrested. The motion court found [Steinbruegge] was aware of the strategy and had consented to it. Therefore, the motion court denied this claim of error.
>
> To prevail on his claim of ineffective assistance of counsel [Steinbruegge] must show first that his counsel's representation fell below an objective standard of reasonableness, and second that his counsel's deficient performance prejudiced his

defense such that, but for the ineffective representation, the result would have been different. <u>Bolden v. State</u>, 171 S.W.3d 785, 787 (Mo. App. W.D. 2005).

Counsel is not ineffective for pursuing reasonable trial strategy. <u>Crowder v. State</u>, 258 S.W.3d 82, 83 (Mo. App. S.D. 2008). Counsel has wide latitude in conducting a defense and may use his best judgment in matters of trial strategy. <u>Id.</u> at 83-84. Courts will not condemn reasonable use of discretion in such matters. <u>Id.</u> at 84. This is because strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. <u>Id.</u>

[Steinbruegge] argues while the record shows [he] was following his counsel's advice to wear the jumpsuit and an inference can be made that it was the strategy of his counsel to have [Steinbruegge] wear the orange suit, no inference can be drawn that this strategy was reasonable. [Steinbruegge] contends this strategy was unreasonable and had an objection been made, the court would have continued the matter until proper attire could be found. [Steinbruegge] maintains he was prejudiced by his counsel's failure to object because the jury saw him in the jumpsuit and "would have assumed that [he] was a criminal or presumed him guilty of the charged crimes based solely on his attire."

In <u>Neal v. State</u>, 99 S.W.3d 571, 576 (Mo. App. S.D. 2003), the court recognized a prisoner cannot be forced to appear at trial wearing identifiable prison clothing. However, in that case, the court found it was not unreasonable to conclude that it was trial counsel's strategy to evoke some sort of sympathy from the jury by pointing out that [the defendant] had been in jail for fifteen months awaiting trial. <u>Id.</u>

As a result, we find [Steinbruegge's] counsel's trial strategy was not unreasonable. In any event, [Steinbruegge] has failed to show he was prejudiced by his counsel's failure to object. Therefore, the motion court did not clearly err in denying [Steinbruegge's] Rule 29.15 motion for postconviction relief without an evidentiary hearing because [Steinbruegge's] counsel was not ineffective for failing to object to [Steinbruegge's] appearing at trial in prison garb.

Resp. Ex. K at 3-5.

As required by <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 3. The court has set forth above federal law applicable to claims of ineffective assistance of counsel. Also, "[s]trategic decisions [of trial counsel] 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Battle v. Delo</u>, 19 F.3d 1547, 1556 (8th Cir. 1994). The Eighth Circuit held in <u>Marcrum v. Lubbers</u>, 509 F.3d 589, 502-505 (8th Cir. 2007):

The Supreme Court has held in several cases that the habeas court's commission is not to invent strategic reasons or accept any strategy counsel could have followed, without regard to what actually happened; when a petitioner shows that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment, the petitioner has rebutted the presumption of strategy, even if the government offers a possible strategic reason that could have, but did not, prompt counsel's course of action. Rompilla v. Beard, 545 U.S. 374, 395-96, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (O'Connor, J., concurring); Wiggins v. Smith, 539 U.S. 510, 526-27, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Kimmelman, 477 U.S. at 385.

Additionally, in regard to a defendant's wearing prison garb, the United States Supreme Court has held that:

> Courts have [ ] required an accused to object to being tried in jail garments, just as he must invoke or abandon other rights. The Fifth Circuit has held: "A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." Hernandez v. Beto, 443 F.2d, at 637. The essential meaning of the Court of Appeals' decision in Hernandez has been described by that court as follows:
>
> > "We held (in Hernandez ) that the defendant and his attorney had the burden to make known that the defendant desired to be tried in civilian clothes before the state could be accountable for his being tried in jail clothes . . . ." United States ex rel. Stahl v. Henderson, 472 F.2d, at 557.

Estelle v. Williams, 425 U.S. 501, 509 (1976).

Significantly, in Estelle, 425 U.S. at 510, the Court noted that not only was no objection made to the defendant's wearing prison attire, but "[t]his omission did not result from any lack of appreciation of the issue"; at trial, defense counsel "expressly referred to [the defendant's] attire during Voir dire." Further, the Court held that under the circumstances of that case, "a desire to elicit jury sympathy would have been a reasonable approach and one which the trial judge might reasonably have assumed was deliberately undertaken." Id. at 510 n.5.

In the matter under consideration, as required by federal law, the Missouri appellate court considered first considered that to establish ineffective assistance of counsel it must be shown both that counsel's performance was unreasonable and that the defendant was prejudiced. The court

further considered that it was a deliberate decision on the part of counsel, with Petitioner's consent, for Petitioner to appear in prison attire; that, in fact, counsel directed the jury's attention to Petitioner's being in prison attire during closing argument; that counsel's strategy to have Petitioner wear prison attire to evoke sympathy from the jury was reasonable; and that, therefore, Petitioner did not receive ineffective assistance of counsel based on counsel's failure to object to Petitioner's wearing prison attire. See Strickland, 466 U.S. at 688; Estelle, 425 U.S. at 509-10; Battle, 19 F.3d at 1556. Further, as required by federal law, the Missouri appellate court considered that Petitioner did not demonstrate that the was prejudiced as a result of his counsel's failure to object to his wearing prison attire. See Mickens, 535 U.S. at 166; Strickland, 466 U.S. at 669, 687. As such, the court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable application of federal law. As such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

**Ground 4 - trial counsel was ineffective for failing to call Petitioner's accomplices as witnesses at trial:**

Petitioner contends that counsel was ineffective for failing to call accomplices Jeremy Block and James Mann as witnesses at Petitioner's trial.

Upon addressing the issue of Petitioner's Ground 4 the Missouri appellate court held:

> To establish ineffectiveness of trial counsel for failing to call a witness, a movant must show that: trial counsel knew or should have known of the existence of the witness; (2) the witness could have been located through reasonable investigation; (3) the witness would have testified if called; and (4) the testimony would have provided a viable defense. McClendon v. State, 247 S.W.3d 549, 556 (Mo. App. E.D. 2007). Counsel's decision [] not to call a witness to testify is presumptively a matter of trial strategy and will not support a movant's claim of ineffective assistance of counsel unless the movant clearly establishes otherwise. Id. The selection of witnesses and evidence are matters of trial strategy and are virtually unchallengeable in an ineffective assistance claim. Evans v. State, 239 S.W.3d 191, 194 (Mo. App. S.D. 2007). Trial Counsel has wide latitude in matters regarding trial strategy. Id.

[Steinbruegge] contends that if called, Mann and Blok would have testified [Steinbruegge] had no part in planning the robbery. [Steinbruegge] alleges his counsel knew he wanted to call Mann and Blok, but he did not investigate them or subpoena them. [Steinbruegge] also pled that he talked to Blok in the recreation yard at the jail and Blok told him he would testify that [Steinbruegge] did not know the robbery was going to happen. [Steinbruegge] further alleged that Mann would testify that [Steinbruegge] had no part in planning the robbery.

The motion court found James Mann was an employee of the Burger King restaurant that was robbed, and that [Steinbruegge's] own testimony showed he was not sure Mann was involved in the robbery, only that he thought he was. Thus, the motion court concluded, based on [Steinbruegge's] testimony, Mann would have lacked knowledge of whether [Steinbruegge] was involved in the robbery. Further, at the time of [Steinbruegge's] trial, Mann was incarcerated in the St. Charles County Detention Center, represented by counsel, and awaiting trial on charges stemming from the same incident. Mann's case was not disposed of until over one month after [Steinbruegge's] formal sentencing.

As for Jeremy Blok, the motion court found Blok was also incarcerated in the St. Charles County Detention Center, represented by counsel, and awaiting trial on charges stemming from the same incident. The motion court stated it would be unreasonable to believe Blok would have testified [Steinbruegge] did not know about the robbery and was not involved. Further, the motion court noted the evidence contradicted [Steinbruegge's] assertions in that [Steinbruegge] admitted to a detective that he had cased the Burger King before the robbery, [Steinbruegge] initially lied to police about being in the getaway car, and [Steinbruegge] gave conflicting statements as to how much money he received for his involvement in the robbery. The motion court concluded that had Blok testified, which was not apparent, his testimony would not have affected the outcome due to the strength of the evidence against [Steinbruegge].

Detective James Woerther testified [Steinbruegge] stated he had knowledge the robbery probably was going to happen and later he admitted he waited in the car when Blok went in to rob the Burger King. [Steinbruegge] also admitted to casing the Burger King with Blok a week before the robbery. The evidence demonstrates [Steinbruegge's] counsel had no reason to believe Mann or Blok would testify favorably for the defense.

Further, Adam Schneider, another participant in the robbery, gave a statement that on the night of the robbery, Mann came to [Steinbruegge's] house on his dinner break from Burger King. Blok and Mann had a discussion in another room, and then Mann returned to work. Schneider stated Blok and [Steinbruegge] told him he just had to wait in the car while Blok robbed the Burger King.

Also, [Steinbruegge's] counsel attempted to draw an adverse inference in closing argument from the State failure to call Blok, Schneider, and Mann to testify.

Thus, [Steinbruegge's] counsel was employing a strategy in not calling these witnesses.

Lastly, [Steinbruegge] never alleged Mann and Blok would be willing to waive their Fifth Amendment right against self-incrimination. We agree with the motion court's finding that it would be unreasonable to believe Blok and Mann would be willing to testify on [Steinbruegge's] behalf when they faced charges stemming from the same incident.

Therefore, we find the motion court did not clearly err in denying [Steinbruegge's] Rule 29.15 motion for post-conviction relief without an evidentiary hearing because [Steinbruegge's] counsel was not ineffective for failing to call Mann and Blok as witnesses.

Resp. Ex. K at 5-8.

As required by <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 4. The court has set forth above federal law applicable to claims of ineffective assistance of counsel as well as the deference afforded strategic decisions made by counsel. Additionally, as discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>Strickland</u>, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" <u>Hanes v. Dormire</u>, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." <u>Id.</u> The decision whether to call witnesses may be a matter of trial strategy. <u>Hall v. Lubbers</u>, 296 F.3d 685, 694 (8th Cir. 2002); <u>Battle v. Delo</u>, 19 F.3d 1547, 1556 (8th Cir. 1994).

Consistent with federal law, the Missouri appellate court considered what Mann and Blok would have said or not said if they had been called to testify; that counsel had no reason to believe that either of them would have testified favorably for Petitioner's defense; that counsel's strategy included drawing an adverse inference from the State's failure to call Block and Mann to testify; that it would be unreasonable to assume that Block and Mann would be willing to waive their Fifth Amendment rights; and that, therefore, counsel was no ineffective for failing to call Mann and Block. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Ground 4 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 688-90; Hall, 296 F.3d at 694; Hanes, 240 F.3d at 698; Battle, 19 F.3d at 1556. The court finds, therefore, that Petitioner's Ground 4 is without merit and that he is not entitled to habeas relief on its basis.

**Ground 5 - trial counsel was ineffective for failing to submit a jury instruction on second degree robbery:**

Upon addressing the issue of Petitioner's Ground 5 the Missouri appellate court held:

[Steinbruegge's] claim relies on his claim that he was not aware a robbery was going to take place. However, the motion court noted [Steinbruegge] was found with Blok dressed in black clothing at night at a closed business that had its lights off one week before the Burger King robbery. There was also evidence identifying Blok as the person who robbed the Burger King, and Blok lived with [Steinbruegge] at the time.

[Steinbruegge] testified he was not aware a robbery was going to be committed. However, Detective Woerther testified [Steinbruegge] had admitted to casing the robbery. [Steinbruegge] also denied involvement initially, but later admitted to being in the getaway car.

The motion court found the only evidence to the contrary of the State's case was [Steinbruegge's] own testimony denying the evidence against him, and his own testimony was contrary to many statements he had previously given. The motion court concluded [Steinbruegge] was not entitled to an instruction for second-degree robbery. [Steinbruegge] testified when Blok got out of the car to rob the Burger King, he did not see him carrying anything and did not know him to carry a gun. [Steinbruegge] argues because he did not know Blok had a gun, he lacked the

requisite mental state to be guilty of first-degree robbery. Thus, submission of an instruction for second-degree robbery would have been appropriate.

Where an offense is a lesser-included offense of that charged, then the issue becomes whether a basis exists to acquit of the offense charged and convict of the lesser. Becker v. State, 260 S.W.3d 905, 910 (Mo. App. E.D. 2008). A trial court has no obligation to instruct the jury on a lesser included offense unless a basis exists for acquitting the defendant of the greater offense charged and convicting him of the lesser-included offense. Id. A lesser-included offense instruction is not required where there is strong and substantial proof of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged. Id.

The difference between first-degree and second-degree robbery is the displaying or threatened use of what appears to be a deadly weapon or dangerous instrument. Sections 569.020 and 569.030. Thus, to be entitled to an instruction for second-degree robbery, a defendant must find a basis in the evidence for the jury to reject the fact that a deadly weapon or dangerous instrument was displayed or used to threaten. The State was not required to prove that [Steinbruegge] intended for Blok to display a deadly weapon. State v. Hicks, 203 S.W.3d 241, 245 (Mo. App. S.D. 2006). The State only needed to show that [Steinbruegge] and Blok acted together with the purpose to commit a criminal offense. Id. The law of accomplice liability imputes the criminal agency of Blok to [Steinbruegge]. Id.

[Steinbruegge's] defense was that he did not know Blok was going to rob the Burger King at all. Thus, [Steinbruegge] was either guilty of nothing as a bystander or if the jury found he was involved in the crime he was guilty of first-degree robbery. There was no basis to submit an instruction for second-degree robbery.

Therefore, we find the motion court did not clearly err in denying [Steinbruegge's] Rule 29.15 motion for post-conviction relief without an evidentiary hearing because [Steinbruegge's] counsel was not ineffective for failing to submit a jury instruction for second-degree robbery.

Resp. Ex. K at 8-10.

As required by Williams, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 5. The court has set forth above federal law applicable to claims of ineffective assistance of trial counsel. Additionally, in Tatum v. Dormire, 183 F.3d 875, 878 (8th Cir. 1999), the Eighth Circuit specifically addressed the issue of the whether a state prisoner is denied his constitutional rights if the jury is not given an instruction on a lesser included offense. In particular,

the court in Tatum noted that it agreed with other "circuits [which] ... have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question." (citing Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir.1990)). See also Green v. Groose, 959 F.2d 708, 709 (8th Cir.1992). The court further held that even if it were to assume that a trial court's failure to instruct the jury on a lesser included offense in a noncapital case could ever amount to a constitutional issue for habeas review, a petitioner's claim will fail where the elements of the lesser included offense were not supported by the evidence at trial. Tatum, 183 F.3d at 878. In this regard, the court noted that if, in a capital case, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction," then "due process is not offended when a state trial court refuses in a noncapital case to submit an instruction not supported by the evidence." Id. (citing Hopper v. Evans, 456 U.S. 605, 611 (1982); Reeves v. Hopkins, 102 F.3d 977, 983 & n. 10 (8th Cir.1996), rev'd on other grounds, 524 U.S. 88 (1998); Williams v. Armontrout, 912 F.2d 924, 928-30 (8th Cir.1990)).

In Petitioner's case, as required by federal law, the Missouri appellate court considered the difference between first and second-degree robbery, which is the displaying or threatening use of a deadly weapon or dangerous instrument; that based on the theory of accomplice liability, the State was required only to show that Petitioner and Blok acted together; that the law of accomplice liability imputes the criminal agency of Blok to Petitioner; that Petitioner's defense was that he did not know Blok was going to rob the Burger King; that, therefore, Petitioner was either guilty of nothing or, if the jury found he was involved in the crime, guilty of first-degree robbery; that second-degree robbery was inconsistent with Petitioner's defense; and that, as such, there was no basis on which to submit an instruction on second-degree robbery. See Tatum, 183 F.3d at 878. The court notes that had counsel requested an instruction on second-degree robbery, the request would have been denied as

there was no basis for such an instruction. Under such circumstances, Petitioner cannot establish that he was prejudiced by counsel's conduct. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 5 is not contrary to federal law and that it is a reasonable application of federal law. The court finds, therefore, that Petitioner's Ground 5 is without merit and that habeas relief on its basis should be denied.

**Ground 6 - trial counsel was ineffective for failing to object to the prosecutor's analogy in closing argument comparing Petitioner's case to the "Son of Sam":**

Upon addressing the issue of Petitioner's Ground 6, the Missouri appellate court considered that "the prosecutor's reference to the 'Son of Sam' occurred in the following context,'" when the prosecutor stated in closing argument as follows:

> Cases are broke a lot of times because of something an officer does. This may be past some of your times, the son of Sam was caught because an officer wrote a parking ticket to the social security number, son of Sam, about a block away from […] one of the victims where he had committed the homicide. In this case Officer Smyka saw two individuals hiding, standing along the side of a closed business, 11:30 at night. What is significant about 11:30 at night? It's a half hour from when the Burger King just a few businesses down closes. Also, it's a Sunday night. That's significant because it's the next Sunday night that the place is robbed. …What are they doing there? You know what they are doing there, ladies and gentlemen of the jury. They are planning this and if it wasn't for Officer Smyka's good work, you would have never heard that testimony.

Resp. Ex. K at 10.

Plaintiff's counsel did not object. The Missouri appellate court further found the issue of Petitioner's Ground 6 without merit and held:

> The motion court found the reference to "Son of Sam" taken in context makes no reference to [Steinbruegge] or his acts. The motion court concluded the reference was to Officer Smyka's work and was not comparing [Steinbruegge] to a serial killer. To prevail on this claim, [Steinbruegge] must show that his counsel's objections would have been upheld if made and that the failure o object resulted in a substantial deprivation of his right to a fair trial. <u>Glass v. State</u>, 227 S.W.3d 463, 473 (Mo. banc 2007). Counsel is not ineffective for failing to make non-meritorious objections. <u>Id.</u> Further, counsel's failure to object during closing argument is generally not error, but is a function of trial strategy. <u>Id.</u>

The trial court retains broad discretion in controlling the scope of closing argument and the court's rulings will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant. <u>State v. Storey</u>, 40 S.W.3d 898, 910 (Mo. banc 2001). Even where the prosecutor's argument is improper, reversal is appropriate only if it is established that the comment of which a defendant complains had a decisive effect on the jury's determination. <u>State v. Matchett</u>, 69 S.W.3d 493, 499 (Mo. App. S.D. 2001).

We find the motion court's decision was not clearly erroneous in its determination that the reference to "Son of Sam" taken in context makes no reference to [Steinbruegge] or his acts and was rather a reference to Officer Smyka's police work, not a comparison of [Steinbruegge] to a serial killer. Therefore, any objection by [Steinbruegge's] trial counsel would have been overruled, and his counsel cannot be ineffective for failing to make a non-meritorious objection.

Resp. Ex. K at 10-11.

As required by <u>Williams</u>, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 6. The court has set forth above federal law applicable to claims of ineffective assistance of counsel. Additionally, federal law provides that counsel is not ineffective for failing to make a non-meritorious objection. See <u>Holloway v. United States</u>, 960 F.2d 1348, 1356 (8th Cir. 1992) (holding that there can be no prejudice where counsel fails to raise a non-meritorious issue). As required by federal law, the Missouri appellate court considered whether Petitioner was prejudiced by counsel's alleged ineffectiveness and held that Petitioner cannot establish the prejudice required to establish ineffective assistance of counsel because any objection would have been found lacking merit. As such, the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 6 is not contrary to federal law and is reasonable application of federal law. See <u>Strickland</u>, 466 U.S. at 687-90; <u>Holloway</u>, 960 F.2d at 1356. The court finds, therefore, that Petitioner's Ground 6 is without merit and that habeas relief on its basis should be denied.

**Ground 7 - direct-appeal counsel was ineffective for failing to argue that the trial court erred in denying Petitioner's motion for acquittal at the close of all evidence because the State did not prove beyond a reasonable doubt that an actual gun was used in the robbery:**

In support of the issue of Ground 7 Petitioner argued before the Missouri appellate court that the State failed to prove beyond a reasonable doubt that an actual gun was used during the robbery and that, therefore, direct appeal counsel was ineffective for failing to make this argument. Petitioner further argued that the evidence indicated that a pellet gun was used in the robbery. As noted by the Missouri appellate court, Petitioner argued before the motion court that the two pellet guns recovered from an accomplice's home did not qualify as "dangerous instruments" and that "he was not aware of any gun." Resp. Ex. K at 11.

Upon addressing the issue of Petitioner's Ground 7 the Missouri appellate court held:

As with claims of ineffective assistance of trial counsel, a movant must demonstrate both that appellate counsel's performance was unreasonable and that appellate counsel's unreasonable failures resulted in prejudice. Taylor v. State, 262 S.W.3d 231, 253 (Mo. banc 2008).

Section 571.015 provides "…any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action… ." [Steinbruegge] argues, relying on State v. Straw, 742 S.W.2d 579, 581 (Mo. App. E.D. 1987), that an empty pellet gun is not readily capable of discharging and causing death or serious physical injury and so does not qualify as a deadly weapon. Moreover, [Steinbruegge] maintains there was no evidence the pellet gun used in the robbery was loaded.

However, even assuming the pellet gun, rather than a "real" gun, was used in the robbery, the evidence was still sufficient to support the armed criminal action conviction because a pellet gun qualifies as a "dangerous instrument." A "dangerous instrument" is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9). Further, Section 571.010(15) defines "[p]rojectile weapon" as "any bow, crossbow, pellet gun, slingshot or other weapon that is not a firearm, which is capable of expelling a projectile that could inflict serious physical injury or death by striking or piercing a person."

Resp. Ex. K at 12-13.

The Missouri appellate court concluded that the motion court did not err in finding that Petitioner was not denied ineffective assistance of appellate counsel on the basis asserted in Ground 7. Resp. Ex. K at 13.

As required by Williams, 529 U.S. 362, the court will consider federal law applicable to the issue raised in Petitioner's Ground 7. The court has set forth above federal law applicable to claims of ineffective assistance of counsel. "To prove his appellate counsel rendered ineffective assistance in violation of the Sixth Amendment, [a habeas petitioner] must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 688 (1984)." Pfau v. Ault, 409 F.3d 993, 939(8th Cir. 2005). Even where there arguably there is merit to a claim of error by the trial court, where such error is harmless beyond a reasonable doubt a habeas petitioner can not successfully allege prejudice. See Odem v. Hopkins, 382 F.3d 846, 851-52 (8th Cir. 2004).

In regard to appellate counsel's failure to raise certain issues on appeal, the "'winnowing' of which issues to bring on appeal is a 'hallmark of effective advocacy'; counsel is not required to raise every conceivable issue on appeal." Garrett v. United States, 78 F.3d 1296, 1306 (8th Cir. 1996). The Eighth Circuit has stated that "'[l]aw is an art, not a science, and many questions that attorneys must decide are questions of judgment and degree. Among the most difficult are decisions as to what issues to press on appeal. . . . It is possible to criticize [an attorney's] choice in hindsight.'" Id. (quoting Simmons v. Lockart, 915 F.2d 372, 275 (8thCir. 1990)).

The court has addressed, above, the presumption regarding strategic decisions made by counsel. Additionally, as stated above, federal law provides that there can be no prejudice where counsel fails to raise non-meritorious issues. Holloway, 960 F.2d at 1356.

In Petitioner's case the Missouri appellate court found that, even assuming a pellet gun was used in the robbery, that Petitioner can not establish that he was prejudiced by counsel's failing to

argue on appeal that the evidence was insufficient to establish armed criminal action because a pellet gun may be a dangerous weapon for purposes of determining whether a defendant is guilty of armed criminal action. Thus, Petitioner cannot establish that he was prejudiced by appellate counsel's conduct. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 7 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. 688; Pfau, 409 F.3d at 939; Holloway, 960 F.2d at 1356. As such, the court finds that Petitioner's Ground 7 is without merit and that habeas relief on its basis should be denied.

Moreover, in regard to the Missouri appellate court's determination that a pellet gun may be the basis for armed criminal action, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court." Thus, to the extent Petitioner challenges

the Missouri appellate court's determination that a pellet gun may be considered a dangerous weapon pursuant to Missouri statutes, Petitioner is challenging the State court's interpretation of State law. As such, Petitioner does not assert a constitutional violation and his claim is not cognizable under § 2254.

## VI.
## CONCLUSION

For the reasons set forth above, the court finds that Petitioner's Ground 1 is not cognizable pursuant to federal habeas review; that Grounds 2-7 and, alternatively, Ground 1 are without merit; and that, therefore, Petitioner's § 2254 Petition should be denied in its entirety. The court further finds the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the § 2254 Petition filed by Petitioner for habeas corpus pursuant is **DENIED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of June, 2010.